UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT SAMUEL,<br><br>Plaintiff,<br><br>v.<br><br>DANIELLE HAMLIN, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-25-HAB-AZ |

OPINION AND ORDER

Robert Samuel, a prisoner without a lawyer, filed an amended complaint against Danielle Hamlin, R.N., and Warden Brian English. ECF 9. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Samuel alleges that he has been diagnosed with Opioid Use Disorder ("OUD"). He was taking suboxone to treat his OUD before he arrived at the Miami Correctional Facility ("MCF"). When Samuel arrived at MCF in February 2024, he signed a contract to receive medication for the duration of his incarceration or so long as is medically necessary through a program called Medication-Assisted Treatment ("MAT"). He

received care through MAT until June 21, 2024. On that day, he presented himself to receive his daily medication and Nurse Hamlin, who was his primary care provider, told Samuel that his dose was being reduced to 13.3 mg. Samuel claims that the decision to reduce his medication was not based on Nurse Hamlin's medical judgment but was instead based on retaliation for speaking out about the harassment MAT participants at MCF received.[1] Samuel refused that day's medication. Nurse Hamlin told Samuel that, if he refused his medication, he would be removed from the MAT program. Samuel indicates that this decision was contrary to the agreement he signed, which said he would be discharged if he missed three consecutive doses, not a single dose. He asserts that he was nonetheless discharged from the program. Samuel indicates he suffered from withdraw symptoms when the medication was stopped. These symptoms included severe vomiting, inability to eat or sleep, anxiety, blurred vision, and chest pain. He reports that he submitted health care requests regarding these symptoms, and nothing was done to address them. Furthermore, no alternative care[2] was provided for his OUD. Samuel seeks both monetary damages and injunctive relief.

Inmates are entitled to adequate medical care under the Eighth Amendment.[3] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a

---

[1] Samuel provides no further details about when or how he spoke out about harassment of MAT participants.

[2] One of the exhibits Samuel attached to his complaint includes an invitation to file a health care request if he requires alternative treatment. ECF 9-1 at 11. It is unclear if Samuel sought alternative treatment.

[3] To the extent that Samuel is attempting to enforce the terms of the MAT agreement, he cannot do so under 42 U.S.C. § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental

2

prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

---

regulations"). The court understands him to be claiming more broadly that he was denied minimally adequate medical care in violation of the Eighth Amendment.

3

Giving Samuel the inferences to which he is entitled at this stage, the court will presume that his opioid use disorder amounts to a serious medical need, as he indicates he has been diagnosed with the disorder and prescribed medicine for this issue in the past. Samuel alleges that Nurse Hamlin reduced and ultimately discontinued his medication for OUD not based on her medical judgment but in retaliation for Samuel voicing complaints about the treatment of inmates in the MAT program. While further evidence may show the decision to reduce the dose of Samuel's medication and, ultimately, to discontinue the medication without an alternative, was based on Nurse Hamlin's medical judgment, Samuel is entitled to the benefit of all reasonable inferences at this stage of the case. Therefore, he will be permitted to proceed against Nurse Hamlin on a claim of deliberate indifference to his medical needs by reducing and discontinuing his medication without providing alternative treatment for Samuel's OUD.

Samuel has also sued Warden Brian English, but the complaint does not allege that Warden English made any decisions regarding Samuel's medical care. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and these individuals can only be held liable for their own actions, not for the "misdeeds" of other prison staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Therefore, Samuel may not proceed against Warden English in his individual capacity.

Samuel claims to have an ongoing need for treatment for OUD. He asks to be put back on Suboxone or a similar medication. Warden English in his official capacity has both the authority and the responsibility to ensure that inmates at his facility are

4

provided with necessary medical care to address serious medical needs. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Samuel will be permitted to proceed on an Eighth Amendment claim against Warden English in his official capacity for permanent injunctive relief related to his need for treatment for OUD.

Samuel's complaint also references the Americans with Disabilities Act (ADA), 42 U.S.C §§ 12131–12134, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "Disability" in this context means: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (citation and internal alteration omitted). When an inmate seeks damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act given the uncertainty about the availability of damages under Title II. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). Relief under these two statues is coextensive. *Id.* To allege a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

Samuel's allegations do not match with a disability discrimination claim. He does not plausibly allege that he is being denied services *because* of a disability. Rather,

5

he describes a lack of medical care *for* his disability. The denial of medical care does not give rise to a claim under the ADA or Rehabilitation Act. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[I]t would be extremely odd to suppose that disabled persons whose disability is treated negligently have a [] claim by virtue of the Americans With Disabilities Act."); *Perrey v. Donahue*, No. 3:06-CV-617, 2007 WL 4277621, at *4 (N.D. Ind. Dec. 3, 2007) (claim for inadequate medical treatment is improper under the ADA and the Rehabilitation Act, and instead the proper avenue for claiming inadequate medical treatment is through the Eighth Amendment). His complaint makes clear that his issue is with the lack of medical treatment he is receiving for OUD. The appropriate vehicle for asserting a claim regarding the denial of medical care is under the Eighth Amendment, and he has already been granted leave to proceed on such a claim. He will not be permitted to proceed under these federal statutes.

Finally, Samuel may be attempting to raise a claim for unlawful retaliation. To state a First Amendment retaliation claim an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

The amended complaint can be read to allege that Samuel's suboxone was terminated because he made statements about MAT participants being harassed. Complaints or grievances about non-frivolous matters qualify as "protected activity" for purposes of a retaliation claim. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

Additionally, being terminated from a necessary medication could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). However, on the third prong, Samuel does not provide any details about whom he made his complaints to or whom he complained about. The court cannot plausibly infer from the minimal information he provides that any defendant acted with a retaliatory motive. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards). Therefore, Samuel will not be permitted to proceed on a First Amendment retaliation claim.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Warden Brian English of Miami Correctional Facility in his official capacity for permeant injunctive relief related to the plaintiff's ongoing need for treatment for opioid use disorder;

(2) GRANTS the plaintiff leave to proceed against Danielle Hamlin, R.N., in her individual capacity for money damages for reducing and discontinuing plaintiff's suboxone and refusing to offer alternative treatment when plaintiff experienced withdrawal symptoms on or about June 21, 2024, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

Warden Brian English at the Indiana Department of Correction and to send him a copy of this order and the amended complaint (ECF 9) pursuant to 28 U.S.C. § 1915(d);

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Danielle Hamlin, R.N., at Centurion Health of Indiana, LLC, with a copy of this order and the amended complaint (ECF 9);

(6) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden English and Danielle Hamlin, R.N., to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 25, 2025.

    s/ Holly A. Brady  
    CHIEF JUDGE HOLLY A. BRADY  
    UNITED STATES DISTRICT COURT